A03A2442. BRADFORD et al. v. THE STATE.
(596 SE2d 715)

JOHNSON, Presiding Judge.

Pursuant to a jury trial, Kenneth Bradford and Jo Ellen Bryant were convicted of three counts of theft by taking. They appeal, challenging the denial of their general and special demurrers to the indictment, the admission of similar transaction evidence and the sufficiency of the evidence supporting the jury verdict. The challenges are without merit, so we affirm their convictions.

1. Bradford and Bryant argue that the trial court erred in denying their general demurrer because (1) the indictment fails to state a crime, and (2) the indictment did not sufficiently apprise them of the charges. Their arguments disregard the plain language of the indictment.

The indictment charges Bradford and Bryant with three counts of theft by taking, all of which arise from their obtaining funds through fraudulent residential mortgage applications. Count 1 accuses them of the offense of:

THEFT BY TAKING in violation of OCGA § 16-8-2 for that said accused, in the County of DeKalb and State of Georgia, on or about September 6, 1996, did then and there unlawfully take United States currency, the property of Matrix Financial Services Corporation, in the approximate amount of $335,942.88, but in any event in an amount greater than five hundred dollars ($500), with the intention of depriving said owner of said property, contrary to the laws of said State, the good order, peace and dignity thereof.

Said United States currency is further described as part of that currency transferred by and from Matrix Financial Services Corporation by check at the September 6, 1996, real estate closing of the property located at 4625 Riversound Drive, Lithonia, Georgia.

Count 2 contains language identical to that used in Count 1, including the same victim, except it concerns a real estate closing held on November 8, 1996, for a different piece of property and in the

amount of $283,992.97. The language of Count 3 is likewise identical to that of the other two counts, except it identifies a different victim, closing date, piece of property, and amount of money stolen — $336,726.25.

Contrary to Bradford and Bryant's contentions, the three-count indictment is not defective and is not subject to either a general or special demurrer.

An accusation or indictment is not subject to a general demurrer unless there is a defect so extreme that the defendant can admit the charge as made and still be innocent. In contrast, an accusation or indictment is subject to special demurrer if it is not "perfect in form as well as substance." By special demurrer an accused claims, not that the charge in an indictment or accusation is fatally defective and incapable of supporting a conviction (as would be asserted by general demurrer), but rather that the charge is imperfect as to form or that the accused is entitled to more information.[1]

As to their general demurrer, Bradford and Bryant could not admit the charges made and still be innocent. The indictment tracks the following statutory definition of theft by taking: "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."[2] Thus, if Bradford and Bryant were to admit the indicted charges, they would be guilty of violating OCGA § 16-8-2 by unlawfully taking each victim's money with the intention of depriving those victims of their property. Because the indictment is not defective, and because Bradford and Bryant could not admit the charges and still be innocent, the trial court correctly denied their general demurrer.

As to their special demurrer, Bradford and Bryant also cannot show that the indictment is insufficient.

The true test of the sufficiency of an indictment to withstand a special demurrer is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for

---

[1] (Footnote omitted.) *State v. Jones*, 251 Ga. App. 192, 193 (553 SE2d 631) (2001).
[2] OCGA § 16-8-2.

a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. It is useful to remember that the purpose of the indictment is to allow defendant to prepare his defense intelligently and to protect him from double jeopardy.[3]

In the instant case, each count of the indictment contains the elements of the charged offense of theft by taking and fully apprises Bradford and Bryant that they must be prepared to meet charges that they took specific amounts of money from specific victims on specific dates. The indictment and the record show precisely what crimes Bradford and Bryant were charged with and convicted of, and they are thereby protected from double jeopardy as to those crimes. The trial court therefore committed no error in denying their special demurrer.

2. Bradford and Bryant claim that their convictions should be reversed because there is not enough evidence to support the jury's verdict finding them guilty of the three counts of theft by taking. The claim is without merit.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence.[4] We do not weigh the evidence or determine witness credibility, but determine only if there is sufficient evidence from which a rational trier of fact could have found the accused guilty of the charged offenses beyond a reasonable doubt.[5]

Viewed in favor of the verdict, the evidence shows that in 1996 and 1997, Bradford and Bryant lived in Georgia under assumed names. Bradford used the name Kenneth Taylor and Bryant used the name C. J. Taylor. They owned and operated a company called Prime Plus, Inc., which ostensibly arranged for investors to buy residential rental property. Prime Plus would purportedly manage the property and pay the investors collected rent money, while the investors would pay the mortgages.

But unbeknownst to the investors, Bradford and Bryant created false and fraudulent loan application documents in order to qualify the investors for the mortgages. Based on the false loan documents, lenders agreed to loan money to the investors. Bradford and Bryant then bought each house in question at fair market value and, on the same day, "flipped" the house by selling it to their investor at a greatly

---

[3] (Citations and punctuation omitted.) *State v. English*, 276 Ga. 343, 346 (2) (a) (578 SE2d 413) (2003).

[4] *Atkinson v. State*, 263 Ga. App. 274, 275 (1) (587 SE2d 332) (2003).

[5] Id.

inflated price. Bradford and Bryant used the proceeds from the "flip" sale to the investor to pay off their own earlier purchase of the house, and they kept the difference between the low price they had paid for the house and the higher price paid by the investor.

As to the theft charged in Count 1 of the indictment, the evidence shows that Prime Plus used Anna Allen as its investor. She worked for Federal Express and earned $1,000 per month. But Prime Plus created a fraudulent loan application package — including false bank statements, earnings statements and tax documents — which misrepresented that Allen was a marketing director earning $12,265 per month, that she had a large bank account balance and that she had made a $40,000 down payment on the house.

Based on that misinformation, Matrix Financial Services Corporation loaned Allen more than $347,000. Prime Plus then bought the house in question for $217,000, and immediately turned around and sold it to Allen at a price of $387,500. Allen defaulted on the loan, and on foreclosure Matrix was able to sell the house for only $239,000.

The evidence relating to the theft alleged in Count 2 of the indictment shows that Bradford and Bryant used Valerie Jones as their Prime Plus investor. The fraudulent documents in Jones' loan package indicated that she earned almost $10,000 per month, had a large bank account balance, and had made a down payment of $32,500. Relying on those fake documents, Matrix agreed to loan Jones $292,000. Prime Plus then bought the house for $190,000, and on the same day sold it to Jones for $325,000. Jones' mortgage fell into default, and at foreclosure the house sold for only $135,000.

As to Count 3 of the indictment, the evidence shows that Anthony Davis was used as the Prime Plus investor. The fraudulent loan package documents showed that he earned in excess of $110,000 per year, had a large bank account balance and had made a down payment of $38,750. Based on the misrepresentations in those documents, First Bancorp Mortgage Corporation agreed to loan Davis more than $348,000. Prime Plus bought the house for $224,800 and then sold it to Davis for $387,500. Upon Davis' default on the loan, First Bancorp foreclosed and sold it for $217,000.

Georgia's theft by taking statute contains the catch-all phrase "regardless of the manner in which the property is taken or appropriated," which renders the statute broad enough to encompass theft by conversion, theft by deception or any other of the myriad, and even yet-to-be-concocted, schemes for depriving people of their property.[6] Thus, the state may indict someone for theft by taking, but prove theft by deception, which is committed when a person obtains property by

---

[6] *Spray v. State*, 223 Ga. App. 154, 155 (1) (476 SE2d 878) (1996).

any deceitful means or artful practice with the intention of depriving the owner of the property.[7] An accused deceives if he intentionally creates or confirms another's impression of a fact or event which is false, and which the accused knows to be false.[8]

In this case, there was sufficient evidence from which the jury was authorized to find beyond a reasonable doubt that Bradford and Bryant committed the charged thefts by intentionally deceiving the victim lenders. Because the evidence is sufficient, Bradford and Bryant have shown no basis for reversing their convictions.

3. Bradford and Bryant complain that the trial court erred in admitting evidence of other transactions because they were not sufficiently similar to the charged offenses. Contrary to their complaint, the other transactions were similar to the charged offenses.

The admissibility of evidence of other transactions is contingent on three showings: (1) there must be a proper purpose for the evidence, (2) there must be sufficient evidence establishing that the accused committed the independent act, and (3) there must be sufficient similarity between the independent act and the crime charged so proof of the former tends to prove the latter.[9] With regard to the similarity requirement, the independent act need not be identical in every aspect to the crime charged.[10]

> The test of admissibility of evidence of other criminal acts by the defendant is not the number of similarities between the two incidents. Rather, such evidence may be admitted if it is substantially relevant for some purpose other than to show a probability that the defendant committed the crime on trial because he is a man of criminal character.[11]

Here, the state introduced evidence of six similar transactions. In all of the instances, Bradford and Bryant targeted investors, prepared false and fraudulent loan application documents for them, and then bought and sold property on the same day. The other transactions were sufficiently similar to the charged offenses to show, not Bradford and Bryant's criminal character, but their scheme, motive, bent of mind and course of conduct.[12] The trial court did not abuse its discretion in admitting the similar transaction evidence.

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

---

[7] *McMahon v. State*, 258 Ga. App. 512, 514 (1) (574 SE2d 548) (2002).

[8] Id.

[9] Id. at 516 (5).

[10] Id. at 517 (5).

[11] (Citation omitted.) Id.

[12] See generally *Tukes v. State*, 250 Ga. App. 117, 122 (3) (550 SE2d 678) (2001).

DECIDED MARCH 10, 2004.

*Demetria N. Williams, Ruth L. Rocker, Bernard S. Brody*, for appellants.

*Jeffrey H. Brickman, District Attorney, Thurbert E. Baker, Attorney General, David S. McLaughlin, Assistant Attorney General*, for appellee.