**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 27, 2013**

# In the Court of Appeals of Georgia

A12A2204. BRYANT v. THE STATE.                              MI-084C

MILLER, Presiding Judge.

Following a jury trial, Michael Bryant was convicted of possession of cocaine (OCGA § 16-3-30 (a)), two counts of possession of a tool for the commission of a crime (OCGA § 16-7-20 (a)), riding a bicycle without a light (OCGA § 40-6-296 (a)), and failure to surrender a license after suspension (OCGA § 40-9-7 (b)). Bryant was granted an out-of-time appeal to challenge the denial of his motion for new trial. On appeal, Bryant contends that the trial court erred in denying his motion to suppress, and that the evidence was insufficient to support his conviction for possession of a cell phone as a tool for the commission of a crime. Bryant also challenges his conviction for possession of cocaine because the indictment listed the offense of possession of cocaine with intent to distribute under OCGA § 16-3-30 (b), and further

contends that his trial counsel provided ineffective assistance. Discerning no error, we affirm.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence. We determine only whether the evidence authorized the jury to find the defendant guilty beyond a reasonable doubt, and in doing so we neither weigh the evidence nor judge the credibility of witnesses.

(Citation omitted.) *Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007).

So viewed, the evidence shows that on the night of June 17, 2010, two police officers observed Bryant riding his bicycle on a Clayton County street. The officers initiated a traffic stop when they noticed that Bryant was riding without a headlight. Upon approaching Bryant, the officers observed a big bulge in one of Bryant's pockets. When the officers asked Bryant about the headlight, Bryant was acting very nervous, did not make eye contact with the officers, and kept reaching towards the bulge in his pocket.

The officer then asked Bryant for identification, and Bryant presented his driver's license. After entering Bryant's identification information into a mobile terminal, the officer learned that Bryant's license had been suspended. When the

2

officer returned from his vehicle, he asked Bryant if Bryant knew that his driver's license had been suspended, and Bryant responded in the affirmative. At this time, Bryant again moved his hand towards the bulge in his pocket, and the officer asked Bryant for consent to search. Bryant refused, and the officers then placed Bryant under arrest for operating a bicycle at night without a headlight and for failing to surrender his driver's license after suspension.

Before transporting him to jail, the officers searched Bryant for weapons or contraband. As a result of the search, the officers found a digital scale, two cellular telephones, over $270 in U. S. currency, and a small plastic bag containing 27 rock-like substances believed to be crack cocaine. The rock-like substances were later tested and determined to be cocaine.

1. On appeal, Bryant contends that the trial court erred in denying his motion to suppress because he was in custody without the benefit of *Miranda*[1] warnings once the officers discovered that his driver's license was suspended, rendering inadmissible statements he made and evidence found as a result of those statements. We disagree.

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LEd2d 694) (1966).

3

An individual must be advised of his *Miranda* rights, including his right against self-incrimination, only after being taken into custody or otherwise deprived of his freedom of action in any significant way. A person is in custody for *Miranda* purposes if he has been formally arrested or restrained to the degree associated with a formal arrest. The test for determining whether a detainee is in custody for *Miranda* purposes is whether a reasonable person in the detainee's position would have thought the detention would not be temporary. . . . As a general rule, although a motorist is deprived of his freedom of action during a traffic stop, such detention is insufficient to trigger the rights set forth in *Miranda*. The issue of whether one is in custody for *Miranda* purposes is a mixed question of law and fact, and the trial court's determination will not be disturbed unless it is clearly erroneous.

(Citations and punctuation omitted.) *Waters v. State*, 306 Ga. App. 114, 116 (1) (701 SE2d 550) (2010).

Here, although Bryant's freedom of movement was deprived during the traffic stop, the officer was not required to provide *Miranda* warnings during the preliminary investigation. See *Waters*, 306 Ga. App. at 116 (1). Although Bryant argues that the officer was required to *Mirandize* him at the point the officer discovered his license was suspended, the relevant inquiry is whether the individual was formally arrested or restrained to the degree associated with a formal arrest, not whether the officer had probable cause to arrest. See *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995); *Arce v. State*, 245 Ga. App. 466, 466-467 (538 SE2d 128) (2000). We find nothing in the record indicating that Bryant should have been given *Miranda*

4

warnings at any point prior to the time the officer placed him under arrest for failure to surrender his suspended driver's license. Notably, there is no evidence that, at any time between the initial stop and the actual arrest, the officer made any statement or took any action that would cause a reasonable person in Bryant's position to believe that his freedom was restrained to the degree associated with a formal arrest. Bryant was not handcuffed, secured in the back of a police vehicle, or treated in any manner that would raise the investigative stop to the level of an arrest. Consequently, the trial court was authorized to conclude that Bryant was not in custody at the time the officer asked Bryant about his driver's license, and that *Miranda* warnings were not required at this time. See *Brown v. State*, 299 Ga. App. 402, 405 (1) (683 SE2d 614) (2009). Therefore, the trial court did not err in denying Bryant's motion to suppress on this basis.

2. Bryant challenges his conviction for possession of cellphones as instrumentalities to commit a crime, because such possession was innocuous.[2] We do not agree.

---

[2] Bryant was charged and convicted of two counts of possessing instrumentalities to commit a crime, but he does not challenge the conviction relating to his possession of the digital scale.

5

With respect to the cellphones, Bryant was charged with possessing devices commonly used in the commission of a violation of the Georgia Controlled Substances Act, with the intent of using said device in the commission of a crime. OCGA § 16-7-20 (a) provides that "[a] person commits the offense of possession of tools for the commission of crime when he has in his possession any tool, explosive, or other device commonly used in the commission of burglary, theft, or other crime with the intent to make use thereof in the commission of a crime."

In this case, there is no dispute that Bryant possessed two cellphones when he was arrested. The officer testified that based upon his experience and training, the possession of multiple cellphones was consistent with someone involved in drug distribution. While the mere possession of a common instrument is, by itself, not a crime, such possession may become a crime when there is an intent to use the instrument to commit a crime. See *Kennon v. State*, 232 Ga. App. 494, 496 (3) (502 SE2d 330) (1998) (possession and intent are essential elements of offense of possession of instrumentalities of commission of crime). Intent is a question of fact for jury resolution and "may be proven by circumstantial evidence, by conduct, demeanor, motive, and all other circumstances." (Citation and punctuation omitted.) Id. The circumstances in this case show that at the time he was arrested, Bryant

6

possessed 27 rocks of crack cocaine, over $272 in U. S. currency, and a digital scale. Based on these circumstances, the jury was authorized to find that Bryant intended to use the cellphones with the intent to commit a violation of the Georgia Controlled Substances Act. See *Copeland v. State*, 273 Ga. App. 850, 854 (2) (616 SE2d 189) (2005) (possession of large amount of currency, cocaine, and electronic scale was evidence to support a finding of a Georgia Controlled Substances Act violation).

3. Bryant next contends that his conviction for possession of a controlled substance was improper because he was not charged with this offense, but was instead charged with possession of a controlled substance with intent to distribute. There is no merit to his claim.

Count One of the indictment was denominated as "possession of a controlled substance with intent to distribute." The indictment actually charged Bryant with "knowingly, intentionally and unlawfully, . . . possess[ing] a Schedule II controlled substance, to wit: cocaine, in violation of the Controlled Substances Act[.]"

> As an initial matter, we note that an accused may challenge the sufficiency of an indictment by filing a general or special demurrer. A general demurrer challenges the sufficiency of the substance of the indictment, whereas a special demurrer challenges the sufficiency of the form of the indictment. Under OCGA § 17-7-110, a special demurrer must be filed within ten days after the arraignment, unless the trial court extends the time for filing. But a general demurrer, in which a defendant

7

contends that the charging instrument fails altogether to charge him with a crime, may be raised at any time before the trial court.

(Citations and punctuation omitted.) *Jackson v. State*, 316 Ga. App. 588, 591-592 (2) (730 SE2d 69) (2012). Bryant did not file a special demurrer in this case and thus waived his right to a special indictment. See *Jones v. State*, 289 Ga. 111, 115 (2) (c) (709 SE2d 773) (2011); *Jackson*, supra, 316 Ga. App. at 592 (2). Bryant did, however, file a general demurrer.

> In determining the sufficiency of an indictment to withstand a general demurrer, the following test is applied: If all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premised, the guilt of the accused follows as a legal conclusion, the indictment is good. An indictment which charges the offense in the language of the defining statute and describes the acts constituting the offense sufficiently to put the defendant on notice of the offense with which he is charged survives a general demurrer.

(Footnote omitted.) *Pulliam v. State*, 309 Ga. App. 477, 479-480 (2) (711 SE2d 21) (2011). Moreover, "it is immaterial what the offense is called, if the averments of the presentment are such as to describe an offense against the laws of the State." (Citation and punctuation omitted.) *Jackson*, supra, 316 Ga. App. at 592 (2); *Striplin v. State*, 284 Ga. App. 92, 94 (643 SE2d 361) (2007).

> [A]n inconsistency between the denomination and the allegations in the indictment is an imperfection, but is one that is subject to a harmless

8

error test on appeal; and a defendant who was not at all misled to his prejudice by any imperfection cannot obtain reversal of his conviction on this ground.

(Punctuation and footnote omitted.) *Striplin*, supra, 284 Ga. App. at 94.

Although the challenged offense was denominated as "possession of a controlled substance with intent to distribute," the allegations tracked the language of possession of a controlled substance and fully apprised Bryant of the offense charged. See OCGA § 16-3-30 (a). Bryant has failed to show that his defense was prejudiced in any way by the inconsistency between the denomination of the offense and the allegations in the indictment. Notably, Bryant himself requested a jury charge on the offense of possession of a controlled substance as a lesser included offense of possession of a controlled substance with intent to distribute. Given Bryant's specific request for the lesser included offense, he cannot show that any imperfection in the indictment prejudiced him because

> an indictment not only charges the defendant with the specified crime, it also embraces all lesser included offenses of the charged offense. An indictment places an accused on notice that he can be convicted of the crimes expressly charged as well as lesser crimes that are included in the charged offenses as a matter of law or fact. Indeed, if an offense is a lesser included offense as a matter of law or fact, an accused can be convicted of that offense[.]

9

(Punctuation and citations omitted.) *State v. Wilson*, 318 Ga. App. 88, 91 (1) (732 SE2d 330) (2012). Since Bryant cannot establish prejudice in the charge in the indictment, his claim affords no basis for reversal.

4. Bryant also contends that trial counsel was ineffective in several respects. We disagree.

> To establish an ineffective assistance claim, an appellant must show not only that his counsel's performance was deficient but also that the deficiency so prejudiced him as to create a reasonable probability that but for counsel's errors, the outcome of the trial would have been different. Failure to satisfy both requirements is fatal to an ineffectiveness claim.

*Mitchell v. State*, 250 Ga. App. 292, 295-296 (2) (551 SE2d 404) (2001).

(a) Bryant argues that trial counsel failed to adequately cross-examine the arresting officer as to Bryant's pre-arrest statements. The record reveals that trial counsel conducted a thorough cross-examination of the arresting officer, and Bryant does not specify how the cross-examination was inadequate. An attorney's decision on how to conduct cross-examinations is a matter of trial tactics that does not amount to ineffective assistance of counsel. See *Ray v. State*, 253 Ga. App. 626, 627 (2) (560 SE2d 54) (2002). Moreover, at the motion for new trial hearing, trial counsel was not asked about his cross-examination of the arresting officer. In the absence of testimony

10

to the contrary, counsel's decisions regarding cross-examination are presumed to be strategic. See *Ray*, supra, 253 Ga. App. at 627 (2).

(b) Bryant also argues that trial counsel was ineffective in failing to request a *Jackson-Denno* hearing to test the voluntariness of the statements he made to the arresting officer prior to his arrest. Bryant has made no showing that his statements were involuntary and would have been excluded had a *Jackson-Denno* hearing taken place. Consequently, Bryant has not demonstrated that counsel's failure to request a *Jackson-Denno* hearing prejudiced him. See *Daly v. State*, 285 Ga. App. 808, 815 (4) (i) (648 SE2d 90) (2007); *Causey v. State*, 215 Ga. App. 723, 727 (10) (a) (452 SE2d 564) (1994).

*Judgment affirmed. Ray and Branch, JJ., concur.*